UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TION TERRELL (D-1),

        Defendant.

_____/

Case No. 16-20076

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [83]**

On February 9, 2016, the grand jury returned a two-count indictment against Defendant Tion Terrell charging him with (1) conspiracy to possess with intent to distribute and to distribute a controlled substance, and (2) distribution of cocaine base, aiding and abetting. (Dkt. # 24). On May 24, 2017, the grand jury returned a superseding indictment against Defendant charging him with an additional count of possession with intent to distribute a controlled substance. (Dkt. # 67). Currently before the Court is Defendant's motion to suppress filed on September 14, 2017. (Dkt. # 83).

Defendant seeks to suppress evidence seized from a search incident to his arrest at his relative's home, located at XX172 Yacama Road in Detroit, Michigan. Specifically, Defendant seeks to suppress 22 individually wrapped packets of heroin and $366 in U.S. currency recovered from Defendant's person. The material facts are not in dispute for purposes of this motion. Accordingly, the Court proceeds without holding an evidentiary hearing. For the reasons stated below, Defendant's motion to suppress is DENIED.

## I.    FACTS

On the afternoon of April 11, 2017, Detroit Police Department ("DPD") officers received information from a confidential informant that Defendant was at a residence located at XX172 Yacama Road in Detroit, Michigan.  (Dkt. # 86-3).  At this time, there existed several outstanding arrest warrants for Defendant, including the one issued in this case in January 2016.  (Dkt. # 86-2).  A search indicated that the XX172 Yacama address was registered to Lance Terrell, one of Defendant's relatives.  (Dkt. # 86-3).  At approximately 9:00 p.m., DPD Sergeant Brandon Cole proceeded XX172 Yacama to conduct surveillance.  He observed a black make fitting Defendant's description enter the home.  *Id.*  Cole informed other officers, and they attempted a "soft knock" on the house at 10:40 p.m.  Cole then observed Defendant look out of an upper story window and flee back inside.  *Id.*  Cole left to type and submit a search warrant while other officers held the location to prevent Defendant from escaping.  *Id.*

The officers eventually entered XX172 Yacama and found Defendant hiding in the attic.  (Dkt. # 86-5).  When the officers searched Defendant incident to his arrest, they found 22 individually wrapped packets of heroin and $366 in U.S. currency on Defendant's person.  *Id.*

Documentation indicates that Defendant was in custody at the Detroit Detention Center on April 12, 2017 at 12:23 a.m. (Dkt. # 86-6, 86-7), and that 36th District Court Magistrate Judge Laura Echartea signed a search warrant on April 12, 2017 at 1:05 a.m. (approximately 40 minutes later) (Dkt. # 86-3).  The Government maintains that the officers received notification via radio that the search warrant had been approved before entering XX172 Yacama, but the Government acknowledges that it cannot reconcile the time written

2

on the warrant with the time of entry into the home. Nevertheless, arguing that the issue is legally irrelevant, the Government assumes *arguendo*, for purposes of this motion, that the search warrant was in fact signed after the officers entered the house and arrested Defendant.

## II.    ANALYSIS

Relying on *Steagald v. United States*, 451 U.S. 204 (1981), Defendant argues that the officers were required to obtain a search warrant before entering his relative's home to execute the arrest warrants for Defendant. Defendant argues that the evidence recovered from his person must be suppressed because it was obtained following an illegal entry into XX172 Yacama. Defendant notes that XX172 Yacama was not his home or a place where he was staying. (Dkt. # 83, Pg ID 212).

The Government responds that the officers did not need a search warrant to arrest Defendant inside his relative's home because a valid arrest warrant existed and the officers saw Defendant inside the home. The Government argues that Defendant's interpretation of *Steagald* is just wrong, and that an evidentiary hearing is not necessary because the motion does not dispute any material facts.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "The chief evil that the Fourth Amendment protects against is the physical entry of the home," and police are generally required to "obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Johnson v. City of Memphis*, 617 F.3d 864, 867-68 (6th Cir. 2010) (internal quotations omitted). The Supreme Court has also held that Fourth Amendment interests are personal. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Therefore, a defendant can assert only his own Fourth Amendment

rights, and not the Fourth Amendment rights of a third-party homeowner. *See United States v. Pruitt*, 458 F.3d 477, 485 (6th Cir. 2006) (Clay, J., concurring).

In *Payton v. New York*, the Supreme Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. 573, 603 (1980). A year later, in *Steagald*, the Court clarified the Fourth Amendment rights of persons not named in an arrest warrant. The defendant in *Steagald* was prosecuted based on evidence seized from his home during the execution of an arrest warrant for another person thought to be in the defendant's home. *Id.* at 206-07. The police had entered the defendant's home with the arrest warrant but without a search warrant. The Supreme Court held that, in the absence of exigent circumstances or consent, a search warrant was required to protect the Fourth Amendment rights *of persons not named in the arrest warrant. Id.* at 216. The Court expressly left open the question at issue here of "whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home." *Id.* at 219.

The Sixth Circuit first took up that unanswered question in *United States v. Buckner*, 717 F.2d 297 (6th Cir. 1983). In that case, Buckner was arrested at his mother's home. The FBI had an arrest warrant for him but no search warrant for the premises. *Id.* at 298-99. Buckner moved to suppress the evidence obtained during a protective sweep of his mother's apartment. The Sixth Circuit found that Buckner lacked standing to challenge the search because he did not live in the apartment. *Id.* at 300. The court went on to explain that, had Buckner had standing, the court would have applied *Payton* and found that Buckner's Fourth Amendment rights were protected because the officers had a warrant for

4

his arrest and reason to believe that he was in his mother's apartment. *Id.* ("It would be illogical to afford the defendant any greater protection in the home of a third party than he was entitled to in his own home.").

Later in *Pruitt*, the Sixth Circuit held that an arrest warrant is sufficient to enter a third party's residence "if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time." 458 F.3d at 483. Similar to Defendant in this case, Pruitt argued that the lack of a search warrant violated his Fourth Amendment rights because police entered a third party's home to execute the arrest warrant for him. Unfortunately for Defendant, the Sixth Circuit rejected this argument, consistent with a majority of circuit courts. *See id.* at 481-83; *see also United States v. Bohannon*, 824 F.3d 242, 250 (2d Cir. 2016) (collecting cases and noting that eight circuit courts "have concluded that the subject of an arrest warrant, apprehended in a third party's residence, may not invoke <u>Steagald</u> to claim that his Fourth Amendment rights were violated because entry into the residence was not authorized by a search warrant"), *cert. denied,* 137 S. Ct. 628 (2017).

In this case, the officers had valid arrest warrants for Defendant. They also had information from a reliable informant that Defendant was at XX172 Yacama. Further, the officers actually saw Defendant inside the house prior to entering the house. Under these circumstances, the arrest warrants were sufficient to enter the relative's home because the officers had a reasonable belief, as well as probable cause to believe, that Defendant, the subject of the arrest warrants, was within the XX172 Yacama residence at that time. *See Pruitt*, 458 F.3d at 483. As discussed above, Defendant may not invoke *Steagald* to claim

that his Fourth Amendment rights were violated when the officers entered XX172 Yacama without a search warrant because: (1) Fourth Amendment rights are personal, and Defendant may not assert his relative's Fourth Amendment rights; and (2) Defendant did not have broader Fourth Amendment rights in his relative's home than he would have had in his own home under *Payton*. *See id*. at 481-82; *Bohannon*, 824 F.3d at 250.

## III. CONCLUSION

The Court concludes that Defendant's Fourth Amendment rights were not violated, and thus DENIES his motion to suppress.

SO ORDERED.


S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 24, 2017


I hereby certify that a copy of the foregoing document was served upon counsel of record on October 24, 2017, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager